**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CV-60321-STRAUSS**

**TERRANCE ANDRE MITCHELL,**

　　Plaintiff,

v.

**KILOLO KIJAKAZI,**
Acting Commissioner of Social Security,

　　Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment/Initial Brief ("Plaintiff's Motion") [DE 10] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 15]. I have reviewed both motions, the additional briefing thereon [DE 17, 19, 21], the administrative record [DE 4], and all other filings in this case. For the reasons discussed herein, Plaintiff's Motion [DE 10] will be **GRANTED** and Defendant's Motion [DE 15] will be **DENIED**.

## I.　　BACKGROUND & PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits on March 1, 2020, alleging a disability onset date of November 2, 2019 ("Alleged Onset Date" or "AOD"). Tr. 20, 113, 129, 322-26. Plaintiff, who was born in 1969, was 50 years old on the AOD. His claim was denied initially and upon reconsideration. Tr. 102-29. Thereafter, Plaintiff appeared with counsel at a telephonic hearing before an Administrative Law Judge ("ALJ") on March 24, 2021. Tr. 58-79. On April 29, 2021, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. 133-45.

However, on March 11, 2022, the Appeals Council vacated the ALJ's decision and remanded the matter to the ALJ. Tr. 151-56. Following remand, Plaintiff and his counsel appeared at a July 13, 2022 telephonic hearing before the ALJ. Tr. 39-57. On August 5, 2022, the ALJ issued a new decision, once again finding that Plaintiff was not disabled. Tr. 20-32. On December 16, 2022, the Appeals Council denied Plaintiff's request for review, thereby leaving the ALJ's decision as the final decision of the Commissioner. Tr. 1-3. Consequently, on February 17, 2023, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

## II.   STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Courts "may not decide facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.   DISCUSSION

#### A.  THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir.1972)); *see also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 404.1520.  This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment."  An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis.  *See id.*

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations.  20 C.F.R. § 404.1520(d).  If so, the ALJ will

find the claimant disabled without considering age, education, and work experience.  *Id.*  If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work.  20 C.F.R. § 404.1520(e).  The Regulations define RFC as "the most you can still do despite your limitations."  20 C.F.R. § 404.1545(a)(1).  This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others.  20 C.F.R. § 404.1545(a)(3).  The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work.  If so, the claimant is found not disabled.  20 C.F.R. § 404.1520(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five.  "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs.  *Id.*  At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work.  *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines.  *See* 20 C.F.R. § 404, subpt. P, app. 2.  The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work."  20 C.F.R. § 404.1569.  The guidelines

4

are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule." 20 C.F.R. § 404.1569. Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (citation omitted). *See also Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC. *Hargis*, 945 F.2d at 1490. However, the Commissioner may carry his or her burden through the use of a vocational expert ("VE") when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003). A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

## B. ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that Plaintiff was not disabled between the AOD and September 30, 2020, Plaintiff's Date Last Insured ("DLI").[1] *See* Tr. 20-32. Initially, the ALJ addressed certain preliminary issues and outlined in detail the five steps of the sequential

---

[1] To succeed on his claim for disability benefits, Plaintiff was required to establish disability prior to his DLI. *See Moore*, 405 F.3d at 1211.

evaluation.  Tr. 20-22.  Then, addressing the first step in the sequential evaluation, the ALJ found

that Plaintiff had not engaged in substantial gainful activity between the AOD and DLI.  Tr. 22.

> At step two, the ALJ found that Plaintiff had the severe impairments of

> cervical degenerative disc disease; right shoulder degenerative joint disease, rotator cuff partial tears, arthritis, and tendonitis; left shoulder degenerative joint disease and rotator cuff tendonitis; bilateral carpal tunnel syndrome; lumbar degenerative disc disease; right knee osteoarthritis; right ankle joint degenerative changes status post ligament tears and open reduction and internal fixation; hypertension; diabetes; and obesity.

Tr. 23.  Next, at step three, the ALJ found that Plaintiff did not have an impairment or combination

of impairments that met or medically equaled the severity of any of the impairments listed in 20

C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 23.

> The ALJ next assessed Plaintiff's RFC, determining that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except: he can never climb ladders, ropes, or scaffolds; he can frequently climb ramps and stairs, balance, and stoop; he can occasionally kneel, crouch, and crawl; he can frequently reach in all directions but never overhead with the right upper extremity; he is limited to pushing and pulling no more than five pounds with the right upper extremity; he can frequently handle bilaterally; he can frequently finger and feel with the left upper extremity; he can occasionally finger and feel with the right upper extremity; he can tolerate frequent exposure to extreme cold, humidity, vibrating surfaces, and tools; and he must avoid exposure to workplace hazards such as unprotected heights, moving mechanical parts, and operating heavy machinery.

Tr. 24.  After assessing Plaintiff's RFC, the ALJ found that – based on Plaintiff's RFC – Plaintiff

was unable to perform his past relevant work through the DLI.  Tr. 30.

Therefore, the ALJ considered Plaintiff's age, education, work experience, and RFC to

determine whether a significant number of jobs, that Plaintiff could perform, exist in the national

economy.  Tr. 30-31.  Relying on testimony from a VE, the ALJ identified three jobs – which

collectively have approximately 46,000 positions nationwide – that Plaintiff is able to perform.

*See* Tr. 31.  As a result, the ALJ found that Plaintiff was not disabled between the AOD and DLI.

Tr. 31.

### C. ANALYSIS

In his motion, Plaintiff contends that the ALJ erred in several ways, including by failing to consider the medical opinion of Dr. Kevin Cairns.  Although I disagree that the ALJ was required to discuss and consider Dr. Cairns' opinion as a "medical opinion," I nevertheless agree that remand is warranted as errors in the ALJ's decision create doubt regarding whether the ALJ considered evidence from Dr. Cairns in evaluating Plaintiff's medical condition.[2]

By way of background, Dr. Cairns began treating Plaintiff around February 5, 2020, more than 7 months before Plaintiff's DLI.  *See* Tr. 529-35.  In both March 2020 and October 2021, Dr. Cairns completed a form in which he opined that Plaintiff's "functional limitations and restrictions, *identified in detail below*, are of such severity that [Plaintiff] cannot perform activities, even at a sedentary level . . . ."  Tr. 570, 1329 (emphasis added).  But Dr. Cairns did not specifically address Plaintiff's functional limitations or restrictions; rather, he opined that Plaintiff could not even perform sedentary work without explaining why or how Plaintiff was so limited.  *See* Tr. 570, 1329.

When the ALJ referenced Dr. Cairns' opinion in her decision, she simply noted that it was offered in October 2021, that it did not relate to a period at issue in this case because it was offered well after the DLI, and consequently, that it was not probative or persuasive.  Tr. 30.  However, the ALJ obviously overlooked the fact that Dr. Cairns provided the same opinion in March 2020, which was several months before the DLI.  Thus, Defendant concedes that the ALJ's determination

---

[2] Because I find that remand for further proceedings is warranted based on issues concerning the ALJ's consideration (or lack thereof) of evidence from Dr. Cairns, I do not reach Plaintiff's other contentions of error.

that Dr. Cairns' opinion did not relate to the period at issue was factually erroneous.  Nonetheless, Defendant contends that the error was harmless because Dr. Cairns' conclusory statement does not qualify as a "medical opinion" and/or was a statement on an issue reserved to the Commissioner. Plaintiff replies that even if Dr. Cairns' opinion was on an issue reserved to the Commissioner, the ALJ nonetheless committed harmful error by failing to consider any medical evidence from Dr. Cairns.  Because this argument – regarding the ALJ failing to consider any evidence from Dr. Cairns – was arguably within the scope of the issues raised in Plaintiff's Motion, but only clearly spelled out for the first time in Plaintiff's Reply, I ordered the parties to submit supplemental briefing on the issue, which they have now done.  *See* [DE 18-21].

As an initial matter, I agree with Defendant that Dr. Cairns' statement regarding Plaintiff's inability to perform even sedentary work either does not qualify as a medical opinion, or at the very least, is a statement on an issue reserved to the Commissioner.  A "medical opinion" is defined as "a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she] ha[s] one or more impairment-related limitations or restrictions in the" ability to: (i) "perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions"; (ii) perform mental demands of work activities; (iii) perform other work demands (*e.g.*, using senses such as seeing or hearing); and/or (iv) adapt to environmental conditions.  20 C.F.R. § 404.1513(a)(2).  Given that Dr. Cairns did not address any specific "physical demands of work activities," and instead opined that Plaintiff could not even perform sedentary work without explanation, it is unlikely that Dr. Cairns' statement qualifies as a "medical opinion."

Regardless, even if Dr. Cairns' statement could arguably be considered a "medical opinion," the statement is clearly one that concerns an issue reserved to the Commissioner.  The

Social Security regulations provide that "[s]tatements on issues reserved to the Commissioner" are "inherently neither valuable nor persuasive to the issue of whether you are disabled . . . ."  20 C.F.R. § 404.1520b(c); *see also Glasby v. Soc. Sec. Admin., Comm'r*, No. 21-12093, 2022 WL 1214015, at *2 (11th Cir. Apr. 25, 2022).  Therefore, "[a]n ALJ is specifically relieved from providing any analysis about how such evidence was considered."  *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *2 (5th Cir. Jan. 18, 2023) (citing 20 C.F.R. § 404.1520b(c)).  The regulations specify eight categories of statements that concern "issues reserved to the Commissioner."  *See* 20 C.F.R. § 404.1520b(c)(3).  Two such categories are statements that you are not "able to work" and "[s]tatements about what your [RFC] is using our programmatic terms about the functional exertional levels in Part 404, Subpart P, Appendix 2, Rule 200.00 instead of descriptions about your functional abilities and limitations."  20 C.F.R. § 404.1520b(c)(3)(i), (v).

Here, by opining that Plaintiff could not perform work even at the sedentary level (the lowest exertional level), Dr. Cairns effectively opined that Plaintiff is unable to work.  Moreover, Dr. Cairns used a programmatic term regarding Plaintiff's functional exertional level rather than describing any of Plaintiff's functional abilities or limitations.  Thus, Dr. Cairns' statement plainly qualifies as a statement on an issue reserved to the Commissioner under § 404.1520b(c)(3)(i) and/or (v).  For this reason, while the ALJ's rationale for finding Dr. Cairns' statement unpersuasive was erroneous, the ALJ was not wrong to find the statement unpersuasive – again, the regulations expressly provide that such a statement is "inherently neither valuable nor persuasive to the issue of whether you are disabled . . . ."  20 C.F.R. § 404.1520b(c).

If the foregoing was the only concern, Defendant would be correct that the ALJ merely committed harmless error.  But Plaintiff correctly points out that the ALJ's incorrect rationale – regarding Dr. Cairns' statement not being offered until long after the DLI – combined with other

concerns raised by the ALJ's clearly erroneous citations to exhibits received from Dr. Cairns' office, casts doubt on whether the ALJ took into account Dr. Cairns' treatment of Plaintiff at all – as opposed to disregarding such treatment on the mistaken belief that Dr. Cairns only treated Plaintiff after the DLI.

Whether the ALJ considered Dr. Cairns' treatment, or disregarded it based on the ALJ's erroneous statement regarding the timing of Dr. Cairns' opinion, is significant.  That is because an ALJ is required to consider "all relevant medical and other evidence" when determining a claimant's RFC.  *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021); *see also* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.").  An "ALJ must also consider a claimant's medical condition taken as a whole."  *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019) (citations omitted).  Importantly, though, "[s]o long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record."  *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)); *see also Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (quoting *Dyer*, 395 F.3d at 1211) (alterations adopted)).  Nevertheless, an ALJ's failure "to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal in its own right."  *Schink*, 935 F.3d at 1269 (quoting *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)) (internal

quotation marks omitted); *see also Morrison v. Comm'r of Soc. Sec.*, 660 F. App'x 829, 834 (11th Cir. 2016) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review." (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

As noted above, I ordered the parties to submit supplemental briefing.  Specifically, I ordered the parties to address: (1) whether there is any indication in the ALJ's decision that she considered medical evidence from Dr. Cairns; and (2) if the ALJ failed to consider medical evidence from Dr. Cairns, does that failure amount to harmful error.  [DE 18].  In ordering supplemental briefing, I noted that while there is no rigid requirement that an ALJ specifically refer to every piece of evidence in the record, the Court must ensure that the ALJ did not disregard all of the evidence from Dr. Cairns based on her erroneous statement regarding Dr. Cairns (i.e., based on her potentially mistaken belief that Dr. Cairns' treatment relates to a period not at issue). *Id.*

Prior to ordering supplemental briefing, I reviewed the parties' cross-motions and briefing, the ALJ's decision, and other materials in this matter.  As part of my review, I attempted to ascertain whether there was any indication that the ALJ did consider Dr. Cairns' treatment (in light of Plaintiff's argument that the ALJ did not).  I noticed that the ALJ included several citations to exhibits containing records received from Dr. Cairns' office.  However, in attempting to verify that the information citing those exhibits actually came from those exhibits, I was largely unable to do so.  I was only able to verify a few pieces of information that may have come from those exhibits.  Aside from one statement that *may have* been based on Dr. Cairns' treatment records, the ALJ's other statements were based on records that, while received from Dr. Cairns' office, were records from other providers (not Dr. Cairns).  Given that only one statement was potentially

based on Dr. Cairns' treatment records and that several citations to exhibits from Dr. Cairns' office appeared to be erroneous, I ordered the supplemental briefing.

In Defendant's sur-reply, Defendant contends that "the ALJ's decision contains ample evidence that the ALJ considered Dr. Cairns's physical examination findings of Plaintiff, as well as other medical evidence provided by Dr. Cairns." [DE 19] at 2. In so arguing, Defendant points to the information mentioned in the preceding paragraph. First, Defendant contends it is clear the ALJ considered Dr. Cairns' examination findings given that she cited to Dr. Cairns' records in finding that "physical examination findings were unremarkable other than references to nonspecific reduced range of motion in all planes, pain with flexion, and positive straight leg raising bilaterally." Tr. 27. As discussed further below, this is the one statement that may have come from Dr. Cairns' treatment records. Second, Defendant points to a few statements the ALJ made based on the records from other providers that were included in the exhibits from Dr. Cairns' office (for example, records of MRI results). Defendant contends that this is further evidence the ALJ considered medical evidence from Dr. Cairns.

In responding to Defendant's sur-reply, Plaintiff maintains that the ALJ failed to consider Dr. Cairns' treatment (based on the ALJ's erroneous statement regarding Dr. Cairns' opinion being rendered after the DLI). Regarding the records that the ALJ considered that were included in the records received from Dr. Cairns' office but generated by other providers, Plaintiff argues the discussion of such records is irrelevant to whether the ALJ considered Dr. Cairns' treatment. While I do not agree that the ALJ's discussion of such records is wholly irrelevant because it does show that the ALJ at least reviewed the exhibits received from Dr. Cairns' office, I do agree with Plaintiff that the ALJ's mere review of the exhibits is not sufficiently probative of whether the ALJ took into account Dr. Cairns' treatment of Plaintiff in evaluating Plaintiff's medical condition.

Plaintiff's response to Defendant's sur-reply also addresses the ALJ's one statement that Defendant asserts is based on Dr. Cairns' treatment records – that "physical examination findings were unremarkable other than references to nonspecific reduced range of motion in all planes, pain with flexion, and positive straight leg raising bilaterally."  Tr. 27.  Plaintiff contends that the examinations Defendant asserts the foregoing statement was based on were not otherwise "unremarkable."  The Defendant points to two examinations from February and March 2020.  In connection with those examinations, Dr. Cairns provided the following comments:

> Cervical Spine Exam: Tenderness over the right cervical facet line, radiating into the back of the head.
>
> Lumbar Spine Exam: Reduced ROM in all planes. Pain with flexion. Positive Fortin's Finger sign. Positive straight leg raise, bilaterally. Positive Faber's, causes axial low back pain. Pain and tenderness over the bilateral greater trochanter. Negative facet loading maneuvers.
>
> Right Shoulder Exam: Positive empty cans test. Positive O'Brien's. Positive Neer's. Positive Hawkins.
>
> Right Knee Exam: Pain and tenderness over the right knee. Anterior drawer sign is positive.

Tr. 532, 541.

The ALJ's description of the examinations is potentially based on Dr. Cairns' comments regarding the lumbar spine portion of the examinations.  However, Plaintiff correctly points out that Dr. Cairns' physical examinations did not reveal unremarkable results aside from reduced range of motion in all planes, pain with flexion, and positive straight leg raising bilaterally.  Thus, to the extent the ALJ's statement regarding physical examination findings was based on Dr. Cairns' examinations, it is wholly unclear how the ALJ reached her conclusion in light of all of the other positive findings noted by Dr. Cairns that the ALJ omitted.

Moreover, Plaintiff also correctly points out that the ALJ evidently included citations to exhibits from Dr. Cairns for statements that find no support in Dr. Cairns' records. These erroneous citations, combined with the ALJ's erroneous statement that Dr. Cairns' opinion (albeit on an issue reserved to the Commissioner) post-dated Plaintiff's DLI, further calls into question whether the ALJ did in fact account for Dr. Cairns' treatment in evaluating Plaintiff's medical condition. For instance, the ALJ cited Exhibit 10F in support of the following findings in the ALJ's decision:

- The claimant's orthopedic surgeon observed that the claimant had normal range of motion in both wrists and fine and gross motor skills at one visit in February 2020 and slight swelling, some subtle thenar atrophy, and subjective decreased sensation to light touch with normal range of motion at another appointment in February 2020.
- In March and April of 2020, he observed that the claimant had tenderness to palpitation over the AC joint and the bicipital groove in the right shoulder.

Tr. 26. However, these findings appear to be based on records from Dr. Wells in Exhibit 8F, not records from Dr. Cairns in Exhibit 10F. *See* Tr. 508, 512, 516.

Ultimately, it is evident that the ALJ erred here. Less clear is whether the ALJ's error was harmful or harmless. However, what is making it difficult to ascertain whether the ALJ's error was harmless is the ALJ's erroneous citations and lack of clarity. To be clear, had the ALJ not erred by stating that Dr. Cairns' opinion was offered after the DLI, remand would not be warranted solely based on her failure to discuss Dr. Cairns' records and treatment of Plaintiff. Again, that is because the ALJ is not required to specifically discuss every piece of evidence in the record. But it is the ALJ's own errors and lack of clarity that call into question whether the ALJ considered all of the relevant evidence and Plaintiff's medical condition as a whole. Therefore, remand is appropriate to ensure that the proper legal analysis is conducted.

## CONCLUSION

For the reasons discussed above, it is **ORDERED and ADJUDGED** that Plaintiff's Motion [DE 10] is **GRANTED** and Defendant's Motion [DE 15] is **DENIED**.  The Court will enter a separate Final Judgment **reversing and remanding** the final decision of the Commissioner.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 19th day of October 2023.

Jared M. Strauss
**United States Magistrate Judge**